### A. J. STEEL v. JACOB KATZENMYER ET AL.

1. SATISFACTION OR DORMANCY, ONLY, KILLS JUDGMENT LIEN—EFFECTS THEREOF.

   The satisfaction or dormancy of a judgment are the only contingencies upon which a judgment lien created under favor of Sec. 5375 Rev. Stat, ceases to exist against the real estate of the judgment debtor. The effect of such satisfaction and dormancy is to release the land of the judgment debtor, both in the counties wherein the judgment was rendered and in those into which it has been extended by the issuing and levying of a foreign execution.

2. ISSUING SECOND EXECUTION, WITHOUT NEW LEVY, SUFFICIENT TO KEEP JUDGMENT LIEN ALIVE.

   The issuing of a second execution to, and placing it in the hands of the sheriff of a county other than that wherein the judgment was rendered within five years from the date of the issue and levy of the first execution will prevent the judgment from becoming dormant as a lien against the real estate of the judgment debtor in such county. Whether issuing the execution to the sheriff of the county wherein the judgment was rendered, and having it there returned, instead of to the sheriff of the county wherein the land was situate, would keep the lien alive, *quaere.*

3. ISSUING OF SECOND EXECUTION NEED NOT BE ENTERED ON FOREIGN DOCKET—PURCHASER MUST SEARCH RECORDS.

   There is no statutory requirement that an entry be made upon the foreign execution docket of the issuing of a second or subsequent execution from the county wherein the judgment was rendered; and when the record shows that a judgment lien has been acquired, the duty devolves upon a prospective purchaser to search the records of the latter county, and ascertain whether the lien has been kept alive or is dormant.

**Fries & Painter,** for plaintiff.

**Baldwin & Harrington** and **J. E. Schatzel,** for defendants.

APPEAL from Wood common pleas court.

PARKER, J. (Orally.)

The case comes into this court on appeal. One of the defendants is the First National Bank of North Baltimore, Ohio. The proceeding is to marshal liens, and the controversy is about the priority of liens. The First National Bank obtained a judgment in the court of common pleas of Hancock county, Ohio, against the defendant Jacob Katzenmyer on March 31, 1896, and forthwith caused an execution to be issued upon the judgment to the sheriff of Hancock county, and which execution was immediately thereafter received by the sheriff of Wood county and levied by him upon certain lands owned by said Jacob Katzenmyer in Wood county, and the execution was duly returned.

Steel v. Katzenmyer.

On November 27, 1901, the plaintiff A. J. Steel obtained a judgment in the court of common pleas of Wood county against Jacob Katzenmyer, and caused an execution to be issued and levied upon this same real estate. The defendant L. D. Langmade also obtained a judgment in the court of common pleas of Wood county on December 11, 1901; an execution was issued upon the judgment and a levy was made upon this land. The defendant Michael Auverter took from Jacob Katzenmyer a mortgage on this land on July 3, 1896, and this mortgage was duly filed for record, and recorded in Wood county, Ohio. Walding, Kinan & Marvin also obtained a judgment in the court of common pleas of Wood county upon April 30, 1900, against the defendant Katzenmyer.

It will be observed that one of these judgments was obtained and the mortgage was taken before five years had expired from the time of the taking of the judgment in favor of the First National Bank of North Baltimore, Ohio, and the levying of the execution issued thereon, and two of the judgments were taken after the expiration of the five years. It is urged as against the levy for the bank, which if it has been kept alive is the first and best lien, that its priority has been lost by reason of the fact that an execution was not issued upon the Hancock county judgment within the five years succeeding the first levy, and levied upon this land, it being insisted that that was necessary to keep the judgment alive. This statement of fact is denied by the First National Bank. It insists that it caused an execution to be issued on March 14, 1901, to the sheriff of Wood county, which was by said sheriff levied upon this land upon March 15, 1901, although it was not returned to the clerk of the court of Hancock county until July 11, 1902. About this dispute there is some confusion in the evidence, but we have arrived at a conclusion upon the law which makes it unnecessary for us to determine this issue of fact. It is clear that the first execution upon the judgment in favor of the First National Bank was promptly issued and levied upon this land; that another execution was issued upon March 14, 1901, and that it came into the hands of the sheriff of Wood county; and we find that the receipt of the second execution was duly endorsed upon the foreign execution docket, but we are in doubt about when the levy of that execution was made, i. e., when the endorsement of a levy was entered thereon.

Now we are of the opinion that sufficient was done to keep alive the judgment lien in favor of the First National Bank of North Baltimore, and that therefore said bank has preserved and still holds its first lien upon this property.

The statute bearing upon this subject, Sec. 1212 Rev. Stat. provides for the keeping by the sheriff of each county of a "foreign execution docket," for the entries to be made therein by the sheriff and the effect of such entries, to wit, "and such entries so made, shall be notice to subsequent purchasers and creditors of the matters contained therein." Section 5375 Rev. Stat. provides that "lands and tenements, within the county where the judgment is entered, shall be bound for the satisfaction thereof from the first day of the term at which judgment is rendered; but judgments by confession, and judgments rendered at the same term at which the action is commenced, shall bind such lands only from the day on which such judgments are rendered; and all other lands, * * * shall be bound from the time they are seized in execution."

There is no provision that the effect of this seizure shall cease at any future time, or that the lands shall cease to be bound, though it is reasonable, and has been decided, that if the judgment becomes dormant the lien ceases to be operative; and as we understand it, the satisfaction, or dormancy of the judgment are the only ways by which, or contingencies upon which the judgment ceases to operate as a lien.

Section 5380 Rev. Stat. provides when and how a judgment may become dormant, and impliedly, how dormancy may be prevented, as follows:

"If execution on a judgment rendered in any court of record in this state, or a transcript of which has been filed as provided in Sec. 5377, be not sued out within five years from the date of the judgment, or if five years intervene between the date of the last execution issued on such judgment and the time of suing out another execution thereon, such judgment shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor."

Such dormancy would affect the lien of the judgment upon lands in the county where the judgment was entered as well as the lien upon lands in another county to which it has been extended by the issuing and levying of an execution; but in this case, as I have indicated, the second execution was issued within the five years from the issuing of the first execution. Five years were not allowed to elapse without the issuing of an execution. It is contended that the issuing of an execution within the purview of the statute, consists in having the execution go out of the clerk's office into the hands of the sheriff and the making of a levy by the sheriff, but we think that is not the true rule. In the case of Kelley v. Vincent, 8 Ohio St. 415, 416, it is held that:

Steel v. Katzenmyer.

"Taking a writ of execution from the clerk's office by the judgment creditor of his attorney, and returning the same to the clerk, without delivery to the sheriff, is not suing out an execution within the meaning of Sec. 101 of the statute of March 8, 1831 [29 O. L. 73; see Sec. 5380 Rev. Stat.], so as to prevent the judgment becoming dormant.

The suing out execution expressed by the statute requires an actual or constructive delivery of the writ to the sheriff."

We think that a fair construction of the statute on this question leads to the conclusion that all that is required is the placing of the writ in the hands of the sheriff. In aiming at this conclusion we have considered the cases of Coal Co. v. Bank, 55 Ohio St. 233 [45 N. E. Rep. 630] and Mason v. Hull, 55 Ohio St. 256 [45 N. E. Rep. 632], which we think sustain our view of the statute. We will not take time to read from them at this time, but simply call attention to them. It is urged that a great deal of inconvenience may result from holding this way; that a person examining the foreign execution docket would be required to go back in the chain of title and find out whether any foreign execution had ever been levied upon the lands, the title to which he is examining, during the time they were owned by the person against whom the foreign execution was issued, and no matter how far back in the history of the title he might find such a foreign execution issued and levied upon the land, he must then go to the county where the judgment was entered and ascertain whether that judgment had been kept alive so that he may know whether the lien is still in force. It is insisted that it would be more reasonable to hold that there must be a fresh levy every five years, or at least there must be something upon the foreign execution docket indicating that there had been an execution issued within the five years; but we are of a different opinion; we think the statute does not require it, and it is not unreasonable to require the search of the record which it is said would be required. When it is shown by the record that a lien upon the land has been acquired, it devolves upon the person buying the land to ascertain whether that lien has been kept alive or lost. In this instance the second execution was issued to the sheriff in this county, and the fact that an execution was received was entered upon the foreign execution docket. Our view is that that is not required, and the judgment might be kept alive by simply issuing an execution to the sheriff of Hancock county, and having it there returned; though it is not necessary to decide that point in this case.

We hold that the lien first acquired by the First National Bank has been preserved and kept alive, and the decree will be accordingly.

Hull and Haynes, JJ., concur.